```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
AKTHER NAHAR,                                               :
                                                            :
                           Plaintiff,                       :
                                                            :           23-CV-3835 (VSB)
                  -against-                                 :
                                                            :           **OPINION & ORDER**
                                                            :
ADR VENTURES WPR LLC,                                       :
*d/b/a* DUNKIN DONUTS,                                      :
                                                            :
                           Defendant.                       :
                                                            :
------------------------------------------------------------X
```

Appearances:

Daniela Mendes
Morgan L. Mickelsen
Brittany Alexandra Stevens
Phillips & Associates, PLLC
New York, NY
*Counsel for Plaintiff*

Nadia M. Pervez
Pervez & Rehman, P.C.
Commack, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

  In this action, Plaintiff Akther Nahar claims that Defendant ADR Ventures WPR LLC, doing business as Dunkin Donuts ("Dunkin"), unlawfully discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. § 290, *et seq.*, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8–107(1)(a), *et seq.*[1]

---

[1] Although Nahar argues that she was subject to a hostile work environment, her amended complaint does not assert a hostile work environment claim. (Doc. 7 ("Amended Complaint" or "Am. Compl.").) Instead, Nahar raised this claim for the first time in her opposition to Dunkin's motion to dismiss. (Doc. 12 at 4.) Because a party may not

Before me is Dunkin's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because I find that Nahar plausibly alleges discrimination under the relevant statutes, Dunkin's motion to dismiss is DENIED.

### I.      **Background and Procedural History**[2]

Akther Nahar, an observant Muslim woman who wears a hijab, began working for Dunkin Donuts on April 23, 2021.[3] (Am. Compl. ¶¶ 6–7.) At all relevant times, Nahar was a Crew Member[4] at the Dunkin Donuts store located at 2200 White Plains Road, Bronx, New York 10467. (*Id.* ¶ 13.) She worked approximately sixteen hours per week, and her shifts were scheduled on a weekly basis. (*Id.* ¶ 14.) Although Nahar's coworkers were allowed to float between the front and back of the store, Nahar was often directed to stay in the back, where she would make drinks and snacks away from customers. (*Id.* ¶ 17.) When coworkers asked why Nahar was relegated to the back of the store, Nahar's supervisor, Anwar Hossain ("Andy"), would explain that Nahar's hijab would drive customers away. (*Id.* ¶¶ 12, 18.) Similarly, Andy would make comments like "[t]he customers will be scared" and "[Nahar] will drive away the

---

"amend its complaint through statements made in motion papers," *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), I do not consider the hostile work environment claim in this Opinion & Order.

[2] The information in this section is drawn from Nahar's Amended Complaint. I assume Nahar's allegations to be true and draw all reasonable inferences in her favor for purposes of this motion. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] A hijab is "a garment worn by many Muslim women that covers the ears, hair, and neck, but leaves the entire face exposed." *Clark v. City of New York*, No. 18-CV-2334, 2021 WL 603046, at *1 (S.D.N.Y. Feb. 16, 2021).

[4] The Amended Complaint does not define what the term "Crew Member" means. However, Dunkin's website, of which I can take judicial notice, *see Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (affirming the district court taking judicial notice of webpages and media reports), states that "Crew Members are generally responsible for delivering great and friendly guest experiences. They prepare products according to operational and quality standards and serve them with enthusiasm in a clean, fast paced environment. They work as part of a team to meet guests' needs and give them a reason to come back." Dunkin' Runs on You, Dunkin', https://www.dunkindonuts.com/en/careers.u2615ufe0fud83cudfc3u2642ufe0f#:~:text=Crew%20Members%20are%20generally%20responsible,a%20reason%20to%20come%20back (last visited July 11, 2024). Essentially, Crew Members are the non-supervisory employees at Dunkin.

customers." (*Id.* ¶ 17.)  On one occasion, Nahar observed Andy tell a Muslim woman "who had come into the location to begin employment" not to wear her hijab inside the store.  (*Id.* ¶ 21.)

During one of Nahar's last shifts, Saikot Hassan, another one of Nahar's supervisors who began working at Dunkin in March 2022, instructed Nahar to move the ovens and clean under them, a task Nahar believed was never before assigned to just one person.  (*Id.* ¶¶ 19, 22.)  Nahar objected and stated that the ovens were too heavy for her to move on her own.[5]  (*Id.* ¶ 22.)

On April 16, 2022, after Defendant stopped scheduling Nahar to work and removed her from the shift schedule, Nahar tried to contact Andy to discuss her absence from the schedule.  (*Id.* ¶¶ 23–24.)  Andy never responded to Nahar, leading Nahar to believe that she had been terminated.  (*Id.* ¶ 24.)  At some point thereafter, a former employee told Nahar that she was fired based on her "gender and religion, namely her wearing a hijab in the workplace."  (*Id.* ¶ 25.)

Based on these events, Nahar filed this lawsuit against Dunkin on May 8, 2023.  (Doc. 1 ("Complaint" or "Compl.").)  On June 12, 2023, Nahar amended her Complaint, alleging religious and gender discrimination under Title VII, the NYSHRL, and the NYCHRL.  (Am. Compl. ¶¶ 35–43.)  On July 28, 2023, Dunkin moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 9.)  Nahar filed her opposition brief on August 11, 2023.  (Doc. 12.)  Dunkin did not file a reply.

II.     **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[5] The Amended Complaint does not allege whether Nahar actually moved or cleaned under the ovens.  (Am. Compl. ¶ 22.)

544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, that tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

## III.  **Discussion**

Nahar claims that Dunkin discriminated against her on the basis of religion and gender.  As noted, Nahar brings claims under Title VII, the NYSHRL, and the NYCHRL.  I analyze the Title VII and NYSHRL claims together, because the substantive standards for liability under these statutes are the same.  *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016).  I address Nahar's NYCHRL claim separately.

### A.  *Title VII & NYSHRL*

Discrimination claims under Title VII are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).  To do so, the plaintiff must show that "(1) [she] belonged to a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks omitted).

At the motion to dismiss stage, however, the plaintiff "is not required to plead a prima facie case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see also Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* do not apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (internal quotation marks and alterations omitted)). Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Dunkin does not dispute that Nahar's allegations, taken as true, suffice to establish the first and second prongs of a prima facie case of discrimination. Dunkin moves to dismiss on the ground that Nahar has not suffered an adverse employment action and, even if Nahar had suffered an adverse employment action, that the alleged adverse action was not, "in any way, related to her protected status as a woman or a Muslim." (Doc. 9-3 at 1.) I address each argument in turn.

### 1. Adverse Employment Action

An adverse employment action in the context of a discrimination claim is one that has "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and emphasis omitted).

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (quoting *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

Nahar identifies several purportedly adverse employment actions. Specifically, she states that the adverse employment actions included (1) the direction that she work in the back of the store, (2) the instruction to move and clean under the ovens, (3) being subjected to offensive and discriminatory comments about her hijab, and (4) the termination of her employment. (*See* Doc. 12 at 12–13.) Of these purportedly adverse employment actions, I conclude that only termination of Nahar's employment constitutes an adverse employment action.

Nahar's allegations that she was "directed to stay in the rear of the store," (Am. Compl. ¶ 17), and "instructed to move the ovens and clean under them," (*id.* ¶ 22), do not amount to "materially adverse change[s] in the terms and conditions of [her] employment." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotation marks omitted). Indeed, Nahar does not allege that either assignment carried with it any negative ramifications, such as a demotion or loss of wages. *See Hill v. Rayboy–Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) (recognizing that a "change in job responsibilities" and "underutilization of Plaintiff's skills" were not adverse employment actions unless "accompanied by materially adverse changes in employment, such as demotion or loss of wages"); *Smalls v. Allstate Ins.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (concluding that unfavorable shifts and undesirable work assignments are not adverse employment actions because they do not have a material impact on terms and conditions of employment). Nor does she allege that the working conditions were inconsistent with the scope of her job responsibilities. *See Rodriguez v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234, 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013) ("[A]ssignments that are part of an employee's normal responsibilities are not 'adverse employment actions' where, as here, the rate of pay and benefits remains the same."). At most, this conduct—that she was directed to remain in the back of the store and to clean under the ovens—reflects the type of

"mere inconveniences" that are insufficient to state a claim for discrimination. *Mathirampuzha*, 548 F.3d at 78.

Nahar also contends that Andy's comments about her hijab are materially adverse employment actions. Offensive as the comments may be, "verbal abuse is typically insufficient to constitute an 'adverse employment action' because 'negative or otherwise insulting statements are hardly even actions, let alone 'adverse actions.''" *Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (alterations omitted) (quoting *Blake v. Potter*, No. 03-CV-7733, 2007 WL 2815637, at *8 (S.D.N.Y. Sept. 25, 2007), *aff'd* 445 F. App'x 389 (2d Cir. 2011); *see Mallett v. Town of Plainville*, No. 03-CV-1137, 2006 WL 931712, at *8 (D. Conn. Apr. 4, 2006) ("[T]he fact that [a coworker] used offensive and inappropriate language and called [the plaintiff] names on a few occasions does not constitute adverse action."). However, because racist or invidious comments may give rise to an intent to discriminate, *see Howe v. Town of Hempstead*, No. 04-CV-0656, 2006 WL 3095819, at *7 (E.D.N.Y. Oct. 30, 2006), they warrant additional consideration in the next section, where I analyze discriminatory intent.

Finally, the termination of Nahar's employment is a materially adverse employment action. Indeed, terminating an employee is the "quintessential materially adverse employment action." *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 572 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013). Accordingly, I conclude that Nahar suffered an adverse employment action when her employment at Dunkin was terminated.[6]

---

[6] Although many of the details surrounding Nahar's termination are missing from the Amended Complaint, the parties appear to agree that Defendant's decision to stop scheduling her for shifts amounted to a decision to terminate her employment, and that Nahar was not constructively discharged. (*See* Am. Compl. ¶ 24 (alleging that Nahar understood that she had been terminated); Doc. 9–3 at 7 (recognizing Nahar's allegation that she was terminated). "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555

### 2. Inference of Discriminatory Intent

"An inference of a discriminatory motivation may arise from circumstances including, but not limited to, an employer's (1) criticism of the employee's performance in ethnically degrading terms, (2) invidious comments about others in the employee's protected group, and (3) favorable treatment of employees not in the protected group." *Daniel v. City of New York*, No. 20-CV-11028, 2021 WL 5988305, at *6 (S.D.N.Y. Dec. 16, 2021) (citing *Littlejohn*, 795 F.3d at 312–13). Several purportedly invidious remarks are key to Nahar's discrimination claim. The significance of those comments depends on the "context in which they were made and whether, fairly considered, they reveal discrimination or 'tend to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class.'" *Id.* (alterations omitted) (quoting *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 116 (2d Cir. 2007)).

I first set aside the allegations that Nahar "understood" certain comments and actions, including her termination, to be based on discriminatory views about her religion and gender. These allegations are entirely conclusory and amount to nothing more than a recitation of the elements of a discrimination claim. (*See* Am. Compl. ¶¶ 16, 17, 22, 26.) Whether Nahar was subject to discriminatory treatment turns not on her subjective understanding, *see Small v. City of New York*, No. 21-CV-1527, 2022 WL 376030, at *5 (S.D.N.Y. Feb. 7, 2022) ("[A] plaintiff's mere subjective belief that [she] was discriminated against will not sustain a claim."), but on the motivations of the individual who terminated her, *see Vega*, 801 F.3d at 87 ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason."). It is therefore also irrelevant that Nahar's colleague told Nahar that "the reason for her

---

(2016).(quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). Because Nahar does not allege constructive discharge, I do not consider the doctrine here.

termination was her gender and religion," (Am. Compl. ¶ 25), because there are no allegations that the colleague had firsthand knowledge as to the decision-making process or was a decisionmaker herself, *see Zhang v. Centene Mgmt. Co.*, No. 21-CV-5313, 2023 WL 2969309, at *8 (E.D.N.Y. Feb. 2, 2023) ("Conclusory statements of discriminatory animus unsupported by factual allegations that give rise to an inference of discriminatory intent have been found insufficient to sustain a plaintiff's minimal burden.").

Putting these allegations aside, I next consider whether the remaining allegations in the Amended Complaint give rise to a plausible inference of discriminatory animus. Those allegations consist principally of Andy's hijab-related comments. In evaluating these statements, I consider the following four non-dispositive factors: "(1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (internal quotation marks and alterations omitted).

Considering these factors, I conclude that Andy's comments give rise to an inference of religious-based discrimination. Although it is unclear what Andy's precise role was in the termination of Nahar's employment, the Amended Complaint alleges that he was Nahar's supervisor with authority to fire her, and he apparently had some responsibility or control over scheduling her to work. (*See* Am. Compl. ¶¶ 12, 24.) Indeed, Nahar believed Andy was involved in the decision to end her employment and tried to contact him to inquire as to why she had not been included on the shift schedule. (*Id.* ¶ 24.) With respect to the second factor, Nahar alleges that Andy made discriminatory remarks "regularly." (*Id.* ¶ 17.) To be sure, Nahar does

not allege the precise timing of Andy's remarks. However, Nahar worked for Dunkin for less than thirteen months, (*id.* ¶¶ 13, 24), capping the amount of time that could have possibly elapsed between Andy's remarks and Nahar's termination, *see, e.g.*, *Papalia v. Milrose Consultants, Inc.*, No. 09-CV-9257, 2011 WL 6937601, at *12 (S.D.N.Y. Dec. 29, 2011) (finding inference of discrimination where the discriminatory comments were made one year prior to the plaintiff's demotion). As to the third and fourth factors, Andy's unprompted and repeated comments about Nahar's wearing a hijab at work—*e.g.*, "The customers will be scared" and "You will drive the customers away," (Am. Compl. ¶ 17)—draw a plausible connection between Andy's views about Nahar's religious practices and the otherwise unexplained decision to stop scheduling her for shifts. This connection is further supported by the fact that Nahar observed Andy tell another woman looking to begin employment at Dunkin not to wear her hijab in the store. (*Id.* ¶ 21.) Together, these allegations give rise to a plausible inference of religious discrimination. *See Vega*, 801 F.3d at 84 (explaining that the plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" to survive a motion to dismiss (internal quotation marks and citation omitted)). Accordingly, Andy's actions and comments provide circumstantial evidence of discriminatory animus sufficient allow Nahar's discrimination claims to proceed to discovery, and Defendant's motion to dismiss the Title VII, and NYSHRL claims is DENIED.[7]

---

[7] Nahar's theory that she was discriminated against because of her gender is not plausible because the single allegation on which this theory rests—that she "understood" Saikot's instruction to move and clean under the ovens as gender-based harassment, (Am. Comp. ¶ 22)—is entirely conclusory. As explained above, Nahar's understanding of her supervisor's motivations is not relevant to her discrimination claim. *See Small*, 2022 WL 376030, at *5. Moreover, even assuming Nahar completed this task, moving and cleaning under the ovens is not an adverse employment action. *See Hill*, 467 F. Supp. 2d at 352.

### B. *NYCHRL*

Because Nahar plausibly alleges claims for religious discrimination under Title VII and the NYSHRL, her similar claim under the more lenient NYCHRL necessarily survives. *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020). Dunkin's motion to dismiss Nahar's discrimination claim under the NYCHRL is therefore DENIED.

### IV. Conclusion

For these reasons, Dunkin's motion to dismiss is DENIED. Dunkin is directed to file an answer within fourteen (14) days of this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 9.

SO ORDERED.

Dated: September 3, 2024
      New York, New York

*[signature: Vernon Broderick]*
Vernon S. Broderick
United States District Judge